**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JULIE SHREVE** | |
| **Plaintiff,** | |
| **v.** | **CIVIL NO. 2:22-CV-05456** |
| **LANDMARK HEALTH, LLC, LANDMARK MSO, LLC, and UNITEDHEALTH GROUP INCORPORATED** | |
| **Defendants.** | |

## <u>COMPLAINT</u>

Plaintiff Julie Shreve states her causes of action against defendants Landmark Health, LLC; Landmark MSO, LLC; and UnitedHealth Group Incorporated as follows:

### THE PARTIES

1.      Plaintiff is Julie Shreve.  Ms. Shreve is 55 years old.  She is a Louisiana citizen.  She resides in Mandeville in St. Tammany parish.

2.      Defendant is Landmark Health, LLC ("**Landmark Health**").  Landmark Health is a foreign limited liability company organized in Delaware and headquartered in Huntington Beach, California.  Landmark Health does not appear to be registered with the Louisiana Secretary of State.  However, Landmark Health does appear to be actively engaged in business in Louisiana and actively employs many Louisiana workers either directly or through its wholly owned subsidiary, Landmark MSO, LLC.

3.      Defendant is Landmark MSO, LLC ("**Landmark MSO**").  Landmark MSO is a foreign limited liability company organized in Delaware and headquartered in Hunting Beach, California.  Landmark MSO is registered with the Louisiana Secretary of State.  Either directly or through its parent company, Landmark Health, Landmark MSO appears to be actively engaged in business in

Louisiana and actively employs many Louisiana workers.  At the time this lawsuit was filed, Landmark MSO's registered agent for the service of process was CT Corporation System.

4.      Defendant is UnitedHealth Group Incorporated ("**UHG**").  UHG is a foreign corporation organized in Delaware and headquartered in Minnetonka, Minnesota.  UHG does not appear to be registered with the Louisiana Secretary of State.  UHG is the parent corporation of many wholly owned subsidiaries, and, through those entities, is the parent of wholly owned subsidiaries Landmark Health and Landmark MSO.

5.      As alleged throughout this lawsuit, it appears all of UHG's wholly owned subsidiaries, including both Landmark Health and Landmark MSO, operate as a single integrated enterprise either completely with respect to all their overall business operations, or at least with respect to the unlawful employment actions alleged in this case.  Meaning, as alleged here, that UHG directed Landmark Health and Landmark MSO to implement the COVID-19 vaccination policy at issue; UHG directed Landmark Health and Landmark MSO to implement the religious-accommodation policy at issue; UHG either denied Ms. Shreve's request for reasonable accommodation based on religious objection, or UHG directed Landmark Health and Landmark MSO to do so; and UHG directed Landmark Health and Landmark MSO to terminate Ms. Shreve's employment, and they did so.

**JURISDICTION AND VENUE**

6.      The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 2000e-2 *et seq.* (Title VII) as more particularly set-out herein.

7.      The Court has supplemental, subject-matter jurisdiction over Ms. Shreve's state law claims pursuant to 28 U.S.C. § 1367(a) because the state-law claims are so related to her federal law claims that they form part of the same case or controversy as more particularly set-out herein.

8.      The Court has personal jurisdiction over Landmark Health, LLC because it regularly transacts business in Louisiana and regularly employs Louisiana citizens, committed unlawful employment acts within Louisiana giving rise to the specific causes of action in this case, and derives substantial revenue from the services it provides in Louisiana. Thus, Landmark Health has established minimum specific contacts with Louisiana, arising from the specific facts of this case, comporting with the requirements of fair play, substantial justice, and the Fourteenth Amendment of the Constitution of the United States.

9.      The Court has personal jurisdiction over Landmark MSO, LLC because it is a limited liability company registered and actively doing business in Louisiana and, through its registered agent for the service of process, is present within Louisiana at the time this suit commenced.

10.     Alternatively, the Court has personal jurisdiction over Landmark MSO, LLC because it regularly transacts business in Louisiana and regularly employs Louisiana citizens, committed unlawful employment acts within Louisiana giving rise to the specific causes of action in this case, and derives substantial revenue from the services it provides in Louisiana. Thus, Landmark MSO has established minimum specific contacts with Louisiana, arising from the specific facts of this case, comporting with the requirements of fair play, substantial justice, and the Fourteenth Amendment of the Constitution of the United States.

11.     The Court has personal jurisdiction over UnitedHealth Group Incorporated because, either directly or through its integrated subsidiaries, appears to regularly transact business in Louisiana and regularly employs Louisiana citizens, committed unlawful employment acts within Louisiana giving rise to the specific causes of action in this case, and derives substantial revenue from the services it provides in Louisiana. Thus, UHG has established minimum specific contacts with Louisiana, arising from the specific facts of this case, comporting with the requirements of fair

play, substantial justice, and the Fourteenth Amendment of the Constitution of the United States.

12.    Venue for Ms. Shreve's Title VII claims is proper in this Court pursuant to 42 U.S.C. § 2000e–5(f)(3) because (1) the unlawful employment practice alleged herein was committed within this judicial forum (specifically, Jefferson parish), (2) upon information and belief the employment records relevant to this action are found in this judicial district (specifically, Jefferson parish), and (3) but for the unlawful employment practice, Ms. Shreve would have been employed in this district (specifically, Jefferson parish).

13.    Venue for Ms. Shreve's supplemental state-law claims is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the unlawful conduct alleged in the case occurred in this judicial forum (Jefferson parish) and Ms. Shreve suffered her injuries and damages in this judicial forum (St. Tammany and Jefferson parishes).

## PROCEDURAL AND STATUTORY REQUIREMENTS

14.    This case arises under Title VII of the Civil Rights Act as amended.

15.    UHG employed more than 500 employees every week of both 2020 and 2021.

16.    Landmark Health employed more than 500 employees every week of both 2020 and 2021.

17.    Ms. Shreve alleges Landmark MSO employed at least 15 employees every day for at least twenty consecutive weeks in either 2021 or 2020 (and perhaps many more employees than that).

18.    Accordingly, UHG, Landmark Health, and Landmark MSO are all covered employers under Title VII.

**A.    Facts Related to the Integrated Business of the Defendants**

19.    For purposes of liability under both Title VII and the Louisiana Employment Discrimination Law (the "LEDL"), Landmark Health and Landmark MSO constitute a single, integrated enterprise.  Landmark MSO is the wholly owned subsidiary of Landmark Health.  Both

companies appear to share identical business offices both locally in Jefferson parish and at their corporate headquarters in Huntington Beach, California.  Landmark Health held itself out as Ms. Shreve's employer while Landmark MSO appears to have been the payer on Ms. Shreve's paychecks.  Otherwise, Landmark MSO had no apparent decision-making involvement with Ms. Shreve's employment or work, and is more akin to a shell or holding company for Landmark Health.  Ms. Shreve's corporate email account indicated she worked for "Landmark Health, LLC." Ms. Shreve reported to employees of Landmark Health.  Landmark Health terminated Ms. Shreve's employment.  Landmark Health advertises its services to the public while Landmark MSO does not appear to have a public-facing presence.  Considering all these facts, Ms. Shreve alleges that Landmark MSO is nothing but the alter-ego of Landmark Health, and the companies constitute a single, integrated employer.

20.     Throughout the remainder of this complaint, unless otherwise noted, the Landmark Health and Landmark MSO integrated enterprise is referred to as "**Landmark**."

21.     For the purposes of Title VII and LEDL liability, UnitedHealth Group Incorporated and Landmark constituted a single, integrated enterprise at least with respect to UHG's COVID-19 vaccination policy, reasonable-accommodation policy, and termination decisions for non-compliance with those policies.  To the best of Ms. Shreve's understanding, the COVID-19 policies at issue in this case were created by UHG.  UHG in turn directed Landmark to implement the policies.  UHG directly corresponded with Ms. Shreve (and all her Landmark colleagues) regarding UHG's COVID-19 vaccination rule, writing:

> This message is being sent to all U.S. integrated and non-integrated employees who have not reported their COVID-19 vaccination series and are subject to UnitedHealth Group's COVID-19 vaccination requirement or federal, state, local or third-party requirements . . . **we have determined that UnitedHealth Group's COVID-19 vaccination requirement applies to you** . . . If you are unwilling or unable to receive the COVID-19 vaccine, you will need to submit an exemption

request based on a documented medical condition or a sincerely held religious belief.  All requests will be reviewed by [UHG's] Enterprise Occupational Health Safety and Human Capital to confirm you have provided sufficient information. (emphasis added)

22.     UHG employees or agents, either directly or in concert with Landmark employees, decided to grant or deny accommodation requests to UHG's COVID-19 policies.  UHG then directed Landmark to terminate its employees who were denied accommodations, and Landmark did so. Considering all these facts, Ms. Shreve alleges that UHG and Landmark constitute a single, integrated enterprise either with respect to their overall business operations, or at least with respect to UHG and Landmark's failure to reasonably accommodate Ms. Shreve's religious objection and terminate her employment.

**B.     Facts Related to Ms. Shreve's Employment and Charge of Discrimination**

23.     Landmark hired Ms. Shreve in November 2020.

24.     UHG and Landmark denied Ms. Shreve's request for reasonable accommodation based on her religious objection to UHG's COVID-19 vaccination policy on November 8, 2021.

25.     UHG and Landmark placed Ms. Shreve on unpaid leave on November 30, 2021.

26.     UHG and Landmark terminated Ms. Shreve's employment on or about January 24, 2022.

27.     On August 16, 2022, within 300 days of both her unlawful termination and preceding denial of accommodation, Ms. Shreve timely filed an EEOC Charge of Discrimination with the EEOC New Orleans Field Office alleging Landmark unlawfully denied Ms. Shreve reasonable accommodation and terminated her employment based on her religion in violation of Title VII (EEOC Charge No. 461-2022-02434).  Ms. Shreve's initial EEOC Inquiry on August 16, 2022 identified her employer as Landmark MSO, LLC.  Ms. Shreve's EEOC Charge of Discrimination filed on August 16, 2022 identified her employer as Landmark Health, LLC.

28.     On September 3, 2022, within 300 days of both her unlawful termination and preceding

denial of accommodation, Ms. Shreve timely filed an amendment to her EEOC Charge of Discrimination clarifying and amplifying her allegations of religious discrimination in violation of Title VII.

29.     EEOC identified the named respondents in Ms. Shreve's case as Landmark Health and UnitedHealth Group Incorporated.

30.     On October 6, 2022, the EEOC issued Ms. Shreve a Notice of Right to Sue in this matter.

31.     EEOC sent a copy of the Notice of Right to Sue to Landmark MSO.

32.     Ms. Shreve has no reason to doubt that Landmark Health, Landmark MSO, and UnitedHealth Group were each on full notice of Ms. Shreve's EEOC Charge against each of them throughout EEOC's entire investigation.

33.     Ms. Shreve timely filed this federal lawsuit within 90 days of receiving the EEOC's Notice of Right to Sue letter.

## FACTS

### A.     The Plaintiff – Julie Shreve

34.     Julie Shreve is a 55-year-old woman who lives in Mandeville, Louisiana.

35.     Ms. Shreve is a Louisiana licensed clinical social worker.

36.     Ms. Shreve and her family rely, in part, on her income to support themselves.

37.     Ms. Shreve is Catholic and adheres to what she describes as a Catholic religious worldview.

### B.     The Defendants UHG and Landmark

38.     UnitedHealth Group Incorporated ("UHG") is a multinational healthcare and insurance conglomerate based in Minnesota.  Depending on the sources cited, UHG is the world's seventh largest company by revenue and the world's largest healthcare company by revenue.

39.     UHG owns many subsidiary companies in both its healthcare and insurance concerns.

40.     UHG, through its wholly owned subsidiaries, wholly owns Landmark Health, LLC. Landmark Health, in turn, wholly owns Landmark MSO, LLC.

41.     When it so chooses, UHG directs Landmark to implement policies or business decisions UHG deems appropriate, and Landmark complies.

42.     Landmark Health is a healthcare company specializing on in-home medical treatment.

43.     Landmark MSO, although a separate company registered with the Louisiana Secretary of State, appears to be fully integrated with the business of Landmark Health, such that Landmark MSO is the alter-ego of Landmark Health.

44.     Relevant to this case, Landmark MSO was the entity that paid Ms. Shreve's wages and paychecks.

45.     In exchange, Ms. Shreve's employment and work benefited Landmark Health and its integrated subsidiary, Landmark MSO.  In the same way, Ms. Shreve's employment also benefited UHG through its subsidiaries.

46.     Landmark hired Ms. Shreve in November 2020 as a Community Health Advocate ("CHA").

47.     Ms. Shreve's job as a CHA was to enroll new patients into Landmark's medical network and advocate for her patients' medical needs to their treatment providers.

48.     Ms. Shreve's job required her to work remotely by phone and computer; to occasionally visit work at Landmark's Louisiana's headquarters in Metairie; and also to personally visit select medical providers in her assigned network, including local clinics, hospitals, nursing homes, and assisted living centers.

**C.     Defendants' Response to COVID-19 Prior to the Availability of Vaccinations**

49.     The respiratory disease known as COVID-19 is caused by the Severe Acute Respiratory

Syndrome Coronavirus 2 ("SARS-CoV-2") and its many variants.

50.     The U.S. Centers for Disease Control ("CDC") reported the first laboratory-confirmed case of COVID-19 in the United States on January 20, 2020.

51.     By the week of August 12, 2020, the CDC reported a total of slightly more than 5 million confirmed cases of COVID-19 nationwide.

52.     During this time, before any COVID-19 vaccine became available, Landmark continued to do business and required Ms. Shreve to perform her responsibilities both remotely and in person.

53.     UHG and Landmark implemented several work-related precautions that they apparently determined were safe enough to allow Ms. Shreve and her colleagues to continue performing their job responsibilities and interacting with others without unreasonable risk of infection.

54.     Among those precautions were social distancing from one another, symptom checks, the use of face coverings, and periodic COVID-19 testing.

55.     Using these precautions, Landmark apparently determined Ms. Shreve and her colleagues did not present a direct threat of infection to each other either in an office or clinical setting.

56.     Ms. Shreve did come to work, did continue to do her job, and Landmark did continue to make significant profits because of the labor of Ms. Shreve and her colleagues.

**D.     Defendants' Response to COVID-19 After the Availability of Vaccinations**

57.     The CDC reports that as of June 1, 2021 the COVID-19 "B.1.617.2 / 'Delta' variant" had become the "dominant variant in the U.S."[1]

58.     The CDC reports that as of July 30, 2021, "The early data showing high viral loads in people infected with the Delta variant of COVID-19 suggest a concern that, unlike with other

---

[1] The CDC publishes a "COVID-19 Timeline" on its website which includes these facts.  The site may be accessed here: https://www.cdc.gov/museum/timeline/covid19.html

variants, vaccinated people infected with Delta can transmit the virus to others."[2]

59.   Around August 23, 2021, the FDA granted full approval to the first publicly available COVID-19 vaccination in the United States manufactured by Pfizer.

60.   Around October 5, 2021, UHG enacted a new employment policy that required all employees who interacted with other people (in other words, employees who were not working fully remote) to receive any of the FDA-approved COVID-19 vaccinations unless the employee applied for and was granted by management an exemption based on religious objection or disability.

61.   At UHG's direction, Landmark also imposed this policy (the "COVID-19 vaccination policy") on its employees.

62.   Under UHG's COVID-19 vaccination policy, an employee who did not receive any of the available COVID-19 vaccinations and who was not granted a reasonable accommodation by November 30, 2021 was placed on unpaid leave for 30 days and then subject to immediate termination.

63.   UHG and Landmark also implemented a reasonable-accommodation policy that permitted employees to apply for an exemption from the COVID-19 vaccination rule based on religious objection or disability.

64.   Based on the facts of the case alleged below, it appears that UHG management reviewed requests for accommodation submitted by Landmark employees and decided whether to approve them.

65.   Alternatively, based on all the facts and circumstances as Ms. Shreve currently understands them, Landmark employees could have or did review their own employees' requests for

---

[2] *Id.* at https://www.cdc.gov/museum/timeline/covid19.html

accommodation and decided whether to approve them.

66.     Relevant to religious objections, UHG or Landmark management first decided whether its employee held a sincere religious objection to their vaccination policy.

67.     Assuming management accepted the sincerity of their employee's objection, UHG or Landmark then decided whether to accommodate the employee's religious beliefs or not.

68.     Employees were not permitted to appeal or challenge management's final decision.

69.     Employees were not given any opportunity to engage in an interactive process with management after the employees made their initial request for accommodation.  Management simply decided whether to accommodate the employee or not, and then informed the employee of the decision without any opportunity for further input, interaction, collaboration, or updated information.

70.     UHG then directed Landmark to carry out its final decision (resulting in accommodation or termination).

71.     Alternatively, based on all the facts and circumstances as Ms. Shreve currently understands them,  Landmark could have or did carry out its own decision making (resulting in accommodation or termination).

72.     UHG and Landmark claimed that all requests for accommodation would be individually reviewed, but Ms. Shreve is not aware of any non-remote employee who applied for and was approved for accommodation.

**E.     Defendants Reject Ms. Shreve's Request for Religious Accommodation**

73.     Ms. Shreve identifies as a Catholic and adheres to what she describes as a Catholic religious worldview.

74.     Ms. Shreve's sincerely held religious belief is that good and evil exist, and she is spiritually

obligated to do good, and spiritually prohibited from doing evil.

75.     Relevant to this case, Ms. Shreve holds a sincere religious belief that, at the time she was employed by Landmark, prevented her from receiving any of the then-currently available COVID vaccines, and, therefore, conflicted with UHG vaccination policy.

76.     Specifically, Ms. Shreve believes that all iterations of the then-available COVID-19 vaccines were spiritually evil because Ms. Shreve determined each was derived, researched, or laboratory-tested using fetal cell lines, harvested from human biological tissue without consent. Ms. Shreve's religious belief is that receiving any of these vaccines is akin to participating in the sin of abortion. Because Ms. Shreve believes abortion in this context is evil, her religious belief prohibited her from receiving any of the then- available COVID-19 vaccines.

77.     Ms. Shreve had also contracted COVID-19 in approximately January 2021 and had fully recovered from the illness.

78.     Prior to her unpaid leave and termination, Ms. Shreve had donated blood several times after her infection, and lab testing confirmed she maintained robust SARS-CoV-2 antibodies as recently as November 10, 2021. Lab testing as recently as August 23, 2022 confirms Ms. Shreve has continued to possess SARS-CoV-2 antibodies.

79.     United implemented an online portal for its employees to request a religious accommodation to its vaccination policy.

80.     Although Ms. Shreve had previously requested a religious accommodation before UHG rolled out its formal application process, neither UHG nor Landmark ever decided on her first request.

81.     Around October 8, 2021, Ms. Shreve timely applied for a religious accommodation again through UHG's online system. Ms. Shreve described the nature of her religious objection,

including that she adhered to a Catholic religious worldview and regarded receiving any of the then-available COVID-19 vaccinations as spiritually prohibited.

82.    Ms. Shreve also informed management that she had previously been infected with COVID-19 and lab testing had confirmed she maintained SARS-CoV-2 antibodies.

83.    Before UHG and Landmark decided Ms. Shreve's request for accommodation, public health experts had begun to determine and report that people who had developed immunity to COVID-19 through prior infection were approximately as likely as their vaccinated peers to transmit (or not transmit) the SARS-CoV-2 Delta variant to others.

84.    For instance, *The Lancet* medical journal reported on October 29, 2021 that "fully vaccinated individuals with breakthrough infections have peak viral load similar to unvaccinated cases and can efficiently transmit infection in household settings, including to fully vaccinated contacts."[3]

85.    On November 2, 2022, Ms. Shreve emailed her manager, Vice President of Landmark's Louisiana and Mississippi operations, Anthony S. Figueredo.

86.    Ms. Shreve specifically asked VP Figueredo if she was permitted to continue her community outreach responsibilities, given her status as unvaccinated, at third-party locations that did not have a vaccination-requirement for visitors at the facility.

87.    VP Figueredo responded on November 2 and confirmed Ms. Shreve was correct and that she could be accommodated on that basis.  VP Figueredo wrote:

> **If your vaccination status does not impede your ability to function in your role as any other CHA would, then we can accommodate the exemption temporarily.** For example, if a facility was allowing us to come in and do embedded outreach, have meetings with the Director of Nursing, etc if vaccinated

---

[3] Anika Singanayagam, et al., *Community transmission and viral load kinetics of the SARS-CoV-2 delta (B.1.617.2) variant in vaccinated and unvaccinated individuals in the UK: a prospective, longitudinal, cohort study*, THE LANCET (Oct. 29, 2021).  A copy of the article may be accessed here: https://www.thelancet.com/journals/laninf/article/PIIS1473-3099(21)00648-4/fulltext

and your vaccination status prohibited you from doing so, we would not be able to continue extending the temporary accommodation. (emphasis added)

88.     Nevertheless, on November 8, 2022, UHG's "Enterprise Occupational Health and Safety" group emailed Ms. Shreve and indicated management had denied her request for reasonable accommodation.

89.     UHG indicated that "Vaccination is an essential job function" for Ms. Shreve's role specifically because of concerns regarding the so-called COVID-19 "Delta" variant.

90.     About 45 minutes later, a Landmark human resources officer emailed Ms. Shreve and indicated management "accepted as true the sincerity of your religious beliefs and your explanation of why those beliefs prevent you from getting vaccinated."

91.     However, Landmark's human resources officer indicated management denied Ms. Shreve's request for accommodation "because we concluded there is no reasonable accommodation available for your position that would not impose an undue hardship on the Company."

92.     This is false and directly contradicted by VP Figueredo's email to Ms. Shreve just six days earlier.   There, VP Figueredo confirmed Ms. Shreve could be accommodated so long as the facilities she visited did not deny access to unvaccinated visitors.

93.     In fact, Ms. Shreve had previously continued her community outreach work throughout the pandemic, and zero of the facilities she was responsible to visit denied her access because she had not received a COVID-19 vaccination.

94.     UHG and Landmark knew that Ms. Shreve was continuing this work and, prior to UHG's vaccination rule, apparently did not determine that Ms. Shreve posed a direct threat to herself or others because of her unvaccinated status.

95.     Ms. Shreve responded to Landmark's denial-of-accommodation email and asked if she was

permitted to appeal the decision, but management indicated no appeals were allowed.

96.     Management informed Ms. Shreve she would be placed on unpaid leave on November 30 and at risk of immediate termination at management's discretion at any time thereafter.

97.     UHG or Landmark did place Ms. Shreve on unpaid leave on November 30.

98.     Prior to her unpaid leave, Ms. Shreve continued to perform her job responsibilities on a remote basis.

99.     UHG and Landmark later terminated Ms. Shreve's employment on January 24, 2022. However, on January 19, 2022, prior to Ms. Shreve's termination, the CDC reported in its Morbidity and Mortality Weekly Report ("MMWR") that people who had developed immunity to COVID-19 from prior infection posed no more risk – and perhaps less of a risk – of reinfection by the predominate Delta variant than people who had developed immunity from vaccination:

> These results suggest that vaccination protects against COVID-19 and related hospitalization **and that surviving a previous infection protects against a reinfection**. Importantly, **infection-derived protection was greater** after the highly transmissible Delta variant became predominant, **coinciding with early declining of vaccine-induced immunity in many persons.** (emphasis added)[4]

100.    CDC's findings were widely reported in news media.[5]

101.    By this time, Ms. Shreve alleges management from UHG and Landmark – particularly given the nature of their business – must have known the truth of the matter that Ms. Shreve, as a person who had already fully recovered from COVID-19 and maintained lab-confirmed antibodies posed no greater threat than a vaccinated employee (and, in fact, posed less of a risk) than her vaccinated peers who had not recovered from a prior COVID-19 infection).

---

[4]  A copy of this report may be accessed at https://www.cdc.gov/mmwr/volumes/71/wr/mm7104e1.htm.

[5]  *See, e.g.*, *Prior COVID infection more protective than vaccination during Delta surge – U.S. study*, REUTERS (Jan. 19, 2022), a copy of which may be accessed here: https://www.reuters.com/business/healthcare-pharmaceuticals/prior-covid-infection-more-protective-than-vaccination-during-delta-surge-us-2022-01-19/

102.    Further, Ms. Shreve alleges that management from UHG and Landmark, given the nature

of their healthcare business, must have known the truth of the matter before they even denied Ms.

Shreve's request for accommodation in November 2021 that Ms. Shreve, as a person who had

already fully recovered from COVID-19 and had lab-confirmed antibodies posed no greater threat

(and, in fact, posed less of a risk) than her vaccinated peers.

103.    Around January 24, 2022, despite having actual knowledge that Ms. Shreve posed no more

direct threat than any of her vaccinated peers, UHG and Landmark terminated Ms. Shreve's

employment anyway.

104.    By this time, there was no reason or basis to treat Ms. Shreve any differently than any of

her vaccinated peers under UHG's COVID-19 vaccination policy.

105.    By this time, there was no reason or basis to deny Ms. Shreve the reasonable

accommodation of continuing to work with pay the same as any of her vaccinated peers.

106.    UHG and Landmark simply denied Ms. Shreve accommodation, and fired her, despite her

bona fide religious objection, because that's what UHG and Landmark wanted to do.

107.    UHG and Landmark's decision, given their actual knowledge of the truth of the matter, is

inexplicable.

**F.    Multiple Reasonable Accommodation Existed at the Time UHG and Landmark
        Denied Ms. Shreve's Request for Exemption and then Fired Her**

108.    Based on the facts and circumstances of this case as alleged throughout this lawsuit, Ms.

Shreve alleges multiple reasonable accommodations existed both at the time her request for

exemption was denied and at the time of her termination that would have permitted her to continue

working normally with full pay with no zero or only de minimums burden on UHG and Landmark.

109.    Specifically, based on her immunity, UHG and Landmark could have simply regarded Ms.

Shreve as being the functional-equivalent of vaccinated against COVID-19 and treated her the

same as any other of her vaccinated peers.

110.    UHG and Landmark could have permitted Ms. Shreve to continue adhering to UHG and Landmark's pre-vaccine safety precautions that included the use of facemasks, including N95 facemasks, social distancing when appropriate, periodic COVID-19 testing at Ms. Shreve's own expense, and symptom checks.

111.    As reported by the American Medical Association, a properly fitted N95 facemask prevents penetration of an infectious dose of COVID-19 virus particles for hundreds of hours of use.[6]

112.    Also as reported by the AMA, an unfitted N95 mask protects against infection by another person also wearing an unfitted N95 mask for up to 25 hours of use.

113.    Ms. Shreve alleges that when adhering to these sorts of reasonable precautions, she posed no greater risk of infection by COVID-19 or transmission of COVID-19 to others than her colleagues who had already received COVID-19 vaccinations.

114.    Ms. Shreve alleges her adherence to these reasonable and ordinary precautions imposed zero burden, hardship, or risk of future burden or hardship on UHG and Landmark, its business, and its employees.

115.    Ms. Shreve alleges that, in fact, she was never a direct threat to herself or anyone else to contract or spread COVID-19 in the workplace.

116.    Ms. Shreve alleges UHG and Landmark knew this to be true at both the time they denied her request for reasonable accommodation, placed her on unpaid leave, and later terminated her.

---

[6] The American Medical Association publishes a recurring series called "What Doctors Wish Patients Knew."  These facts were reported by the AMA in its June 24, 2022 edition entitled "What doctors wish patients knew about wearing N95 masks."  A copy of the edition may be accessed here: https://www.ama-assn.org/delivering-care/public-health/what-doctors-wish-patients-knew-about-wearing-n95-masks

**G.     UHG and Landmark's Decision Making Was Inexplicable and Evinces Religious Animus**

117.    Based on the facts and circumstances of this case as alleged throughout this complaint, Ms. Shreve also alleges that UHG and Landmark's decision-making regarding the denial of her request for exemption, forbidding any appeal or follow-up to management's decision, placing Ms. Shreve on unpaid leave, and terminating her employment were inexplicable.

118.    Ms. Shreve alleges the only plausible explanation for terminating Ms. Shreve when UHG and Landmark (1) knew that she had immunity against COVID-19 and (2) abundant reasonable accommodations existed to permit Ms. Shreve to continue working was that UHG and Landmark's management were simply biased against Ms. Shreve because of her religion, and ultimately denied her request for accommodation, placed her on unpaid leave, and terminated her because of her religion.

119.    Alternatively, based on these facts, Ms. Shreve alleges UHG and Landmark's decision-making on these issues was at least motivated by Ms. Shreve's religion.

120.    Based on these inexplicable facts, Ms. Shreve alleges that UHG and Landmark's management took these actions against Ms. Shreve maliciously or, at the very least, with a reckless indifference to her federal right to be free from religious discrimination.

**H.     The Aftermath**

121.    Ms. Shreve suffered unemployment, loss of her income, and loss of his fringe benefits because of UHG and Landmark's religious discrimination, failure to accommodate, and wrongful termination.

122.    Ms. Shreve has suffered significant mental anguish, emotional distress, and worsened or exacerbated physical sickness and injury because of UHG and Landmark's religious discrimination, failure to accommodate, and wrongful termination.

123.    Ms. Shreve has suffered other compensatory and out-of-pocket damages because of UHG and Landmark's religious discrimination, failure to accommodate, and wrongful termination.

## CAUSES OF ACTION

**A.      Wrongful Termination and Failure to Reasonably Accommodate Religious Objection against UHG, Landmark Health, and Landmark MSO under Title VII**

124.    Ms. Shreve states a cause of action for wrongful termination and failure to reasonably accommodate her religious objection against UHG, Landmark Health, and Landmark MSO under Title VII.

125.    Pursuant to Title VII of the Civil Rights Act of 1964 (as amended), an employer may not discriminate against any "individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's . . . religion[.]" 42 U.S.C. § 2000e-2(a)(1). "Religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

126.    Accordingly, Title VII makes it "an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977).  A plaintiff proves a prima facie case for failure-to-accommodate discrimination by showing "(1) that he had a bona fide religious belief that conflicted with an employment requirement; (2) that he informed the employer of his belief; and (3) that he was discharged for failing to comply with the conflicting employment requirement." *Antoine v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013).  Once the plaintiff proves a prima facie case, "the burden shifts to the defendant to demonstrate either that it reasonably accommodated the employee, or that it

was unable to reasonably accommodate the employee's needs without undue hardship." *Id.* Current decisional law holds a proposed accommodation is unreasonable "when an employer is required to bear more than a de minimis cost." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 487 (5th Cir. 2014); *accord Hardison*, 432 U.S. at 84.

127.    An employer who discriminates against an employee in violation of Title VII is liable for the employee's lost back wages, lost future wages or reinstatement, compensatory damages, punitive damages, and reasonable attorney's fees and costs incurred in the matter.

128.    Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

129.    At the outset, Ms. Shreve has proven her prima facie case for failure-to-accommodate discrimination.   She held a sincere, religious belief that conflicted with UHG's COVID-19 vaccination policy (described throughout this lawsuit).  Ms. Shreve timely requested a reasonable accommodation based on her religious objection.  UHG and Landmark acknowledged receipt of the request.   UHG and Landmark admittedly accepted the sincerity of Ms. Shreve's religious objection.   UHG and Landmark then placed Ms. Shreve on unpaid leave and terminated her because she failed to comply with UHG's vaccination policy.

130.    UHG and Landmark, in turn, failed to offer Ms. Shreve any reasonable accommodation for her religious beliefs.   UHG and Landmark now must bear the burden of persuasion that no reasonable accommodation existed, which Ms. Shreve disputes.

131.    Specifically, for purposes here, Ms. Shreve alleges three separate reasonable accommodations were available to her, any of which could have allowed her to continue working with pay and which would have caused zero or only a de minimus burden to UHG and Landmark.

132.    First, as described throughout this complaint, UHG and Landmark could have simply regarded Ms. Shreve as being the functional-equivalent of vaccinated against COVID-19 and in

compliance with UHG's policy given her prior COVID-19 infection, lab-confirmed immunity, and the then-current, public-health consensus that Ms. Shreve posed no greater risk of reinfection (and perhaps less of a risk) than any of her peers who had received a COVID-19 vaccination.

133.   Second, as described throughout this complaint, UHG and Landmark could have permitted Ms. Shreve to continue working while observing the same or even greater safety precautions that UHG and Landmark had already imposed on her and all other CHA employees, including the use of approved face coverings, periodic COVID-19 testing at Ms. Shreve's own expense, symptom checks, and social distancing where appropriate.  This is especially true given that VP Figueredo had told Ms. Shreve by email on November 2, 2021 that she could be accommodated so long as the facilities she was required to call upon did not have policies restricting access to unvaccinated visitors, and given that at the time, to the best of her knowledge, none of Ms. Shreve's assigned facilities had such a rule.

134.   Third, there was likely other reasonable accommodations available to Ms. Shreve, but UHG and Landmark refused to discuss them with Ms. Shreve given the closed-box nature of UHG's reasonable-accommodation process.  Specifically, UHG and Landmark did not engage in any interactive process with Ms. Shreve to determine a reasonable accommodation based on the facts of her job assignment, and UHG did not permit Ms. Shreve to discuss, appeal, or engage in an interactive process with UHG and Landmark after they announced management's decision to deny her requested accommodation.  Ms. Shreve alleges she and management could have devised a reasonable accommodation had management not refused any interactive process.

135.   Ms. Shreve alleges that any of these reasonable accommodations would not have constituted more than a de minimis burden to UHG and Landmark on their face.  None of these already-in-use accommodations would have cost UHG or Landmark anything.  None of these

accommodations burdened UHG or Landmark's business.  None of these accommodations posed a reasonable risk to workplace safety.  UHG and Landmark simply refused to reasonably accommodate Ms. Shreve's religious beliefs because management did not want to.

136.    Accordingly, UHG, Landmark Health, and Landmark MSO owe Ms. Shreve all damages arising from their failure to reasonably accommodate her religious beliefs and practices, including Ms. Shreve's lost back wages, lost future wages or reinstatement, compensatory damages, punitive damages, and reasonable attorney's fees and costs incurred in the matter.

137.    Finally, in the alternative, if the Court were to find that a proposed accommodation that would have permitted Ms. Shreve to continue working was nevertheless "unreasonable" because it imposed something more than "de minimis" burden on UHG or Landmark, Ms. Shreve alleges the proper standard to evaluate a reasonable accommodation claim in a Title VII religious objection case is akin to the standard currently applicable in disability claims under the ADAAA – that is to say, an individualized assessment of current circumstances that show that a specific reasonable accommodation would cause the employer significant difficulty or expense.  *See* 29 C.F.R. § 1630.2.  Plaintiff alleges the "de minimus" standard currently applicable to Title VII religious objection cases is inconsistent with the statutory text of 42 U.S.C. § 2000e(j) and its meaning and should be overturned.   Under a standard akin to those applicable in ADAAA cases, the accommodations available to Ms. Shreve were reasonable as a matter of law.  Plaintiff likewise alternatively alleges that defendants were obligated to extend to Ms. Shreve any reasonable accommodation from its COVID-19 vaccination policy on account of her religious objection that they afforded to any other employee for any other reason.  *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015) ("But Title VII does not demand mere neutrality with regard to religious practices – that they be treated no worse than other practices.  Rather, it gives them

favored treatment . . . Title VII requires otherwise-neutral policies to give way to the need for an accommodation").

**B.      Wrongful Termination and Unlawful Disparate-Treatment Discrimination Based on Religion against UHG, Landmark Health, and Landmark MSO under Title VII**

138.    Ms. Shreve states a cause of action for wrongful termination and unlawful disparate-treatment discrimination based on her religion against UHG, Landmark Health, and Landmark MSO under Title VII.[7]

139.    Under Title VII, an employer illegally discriminates against and terminates an employee when the decision is "because of" the worker's religion.  42 U.S.C. §2000e-2(a)(1).  An employer also illegally terminates an employee when the decision "was a motivating factor for any employment practice, even though other factors also motivated the practice."  42 U.S.C. § 2000e-2(m); *accord Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005) (so holding).  In a Title VII disparate-treatment action, an employer is vicariously liable for its decision-maker's discriminatory acts when the decision-maker serves as the employer's agent, or when the employer knew or should have known of the decision-maker's discriminatory conduct and took no remedial action.  *See e.g.*, *Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.*, 876 F.2d 1231, 1235 (5th Cir. 1989).

140.    Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

141.    As alleged throughout this complaint, UHG and Landmark's decision to deny Ms. Shreve an exemption from UHG's COVID-19 vaccination policy, despite the availability of reasonable accommodations, despite Ms. Shreve's immunization from COVID-19, and against the weight of

---

[7]  The Supreme Court has held a Title VII discrimination claim based on religious animus and a Title VII claim based on failure-to-accommodate are both claims for disparate-treatment discrimination under 42 U.S.C. § 2000e-2.  *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 (2015).  Here, plaintiff presents the facts and law of her disparate treatment claims based on religious animus and failure-to-accommodate separately merely for the sake of clarity.

public health knowledge at the time was inexplicable.  Ms. Shreve alleges the more plausible explanation for these facts is that UHG and Landmark held bias against Ms. Shreve because of her religion, and denied her an accommodation, placed her on unpaid leave, and terminated her because of that animus.

142.    In the alternative, Ms. Shreve alleges that UHG and Landmark's decision-making on these issues was at least motivated by her religion.

143.    Accordingly, UHG, Landmark Health, and Landmark MSO owe Ms. Shreve all damages arising from their failure to reasonably accommodate her religious beliefs and practices, including Ms. Shreve's lost back wages, lost future wages or reinstatement, compensatory damages, punitive damages, and reasonable attorney's fees and costs incurred in the matter.

**C.    Wrongful Termination and Unlawful Discrimination because of Religion against UHG, Landmark Health, and Landmark MSO under the LEDL**

144.    Ms. Shreve states a cause of action for wrongful termination and unlawful discrimination because of religion against UHG, Landmark Health, and Landmark MSO under the Louisiana Employment Discrimination Law, codified at La. Rev. Stat. Ann. § 23:301 *et seq.*

145.    Under the LEDL, no employer may discriminate against an employee based on her religion. La. Rev. Stat. Ann. § 23:332(A)(1).  LEDL discrimination claims are analyzed under the analogous Title VII standard.  *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007).

146.    Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

147.    Accordingly, for all the reasons stated throughout this complaint, including plaintiff's allegations that UHG, Landmark Health, and Landmark MSO constitute a single, integrated enterprise relevant to Ms. Shreve's employment, denial of accommodation, and termination in this case, and specifically incorporating the analysis of plaintiff's claims for failure-to-accommodate and disparate-treatment discrimination based on religion under Title VII, UHG, Landmark Health,

and Landmark MSO is liable to Ms. Shreve for all her damages arising from defendants' unlawful discrimination, including lost back wages, lost future wages or reinstatement, compensatory damages, and reasonable attorney's fees and costs incurred in this matter.

## RESERVATION OF AMENDMENT

Ms. Shreve reserves the right to amend this lawsuit as circumstances warrant.

## JURY DEMAND

Ms. Shreve requests a trial by jury on all issues and causes of action triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Julie Shreve prays that this complaint be deemed good and sufficient; that it and summons be served on defendants Landmark Health, LLC, Landmark MSO, LLC, and UnitedHealth Group Incorporated; and, after due proceedings are had, that judgment be entered in favor of plaintiff and against defendants providing the following relief, remedies, and damages as appropriate:

1. Under Title VII and the LEDL, the entry of a declaratory judgment in favor of Ms. Shreve and against all defendants declaring that the practices complained of in this complaint are unlawful under federal and state law and that defendants willfully, maliciously, or recklessly as the case may be violated the rights of Ms. Shreve as alleged and proven.

2. Under Title VII, awarding Ms. Shreve all damages and equitable relief due against all defendants, including but not limited to back pay, front pay or reinstatement, compensatory damages, punitive damages, and reasonable attorney's fees and costs.

3. Under the LEDL, awarding Ms. Shreve all damages and equitable relief due against all defendants, including but not limited to back pay, front pay or reinstatement, compensatory damages, and reasonable attorney's fees and costs.

4. Under Title VII and the LEDL, awarding all other legal or equitable relief to which plaintiff is due.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz, TA (Bar #32746)
The Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A / Mandeville, LA 70448
Telephone: (504) 275-5149
Facsimile: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for Julie Shreve*

**CLERK OF COURT:**
**PLEASE HOLD SUMMONS PENDING REQUEST FOR WAIVER OF SUMMONS**

DocuSign Envelope ID: CE0A3EE2-BE14-467B-A803-8871AC6E6272

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

**JULIE SHREVE**

   **Plaintiff,**

  **v.**           **CIVIL NO.**

**LANDMARK HEALTH, LLC, LANDMARK
MSO, LLC, and UNITEDHEALTH GROUP
INCORPORATED**

   **Defendants.**

---

## DECLARATION OF JULIE SHREVE

 I, Julie Shreve, am 55 years old, and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following facts and true and correct to the best of my knowledge and recollection:

1. I am the named plaintiff in the lawsuit *Julie Shreve v. Landmark Health, LLC et al.*, soon to be filed in the United States District Court for the Eastern District of Louisiana.

2. After reviewing the entire document, I authorized and instructed my attorney, Kevin S. Vogeltanz, to file the original Complaint in this matter and to assert all of the causes of action included therein.

3. I verify that, at the time of its filing, each of the factual allegations of the Complaint was true and correct to the best of my knowledge and recollection.

 I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and recollection.  Executed on ___12/26/2022___

         DocuSigned by:

         JULIE M. SHREVE

         ABD3D386A6B3475...

         Julie Shreve